FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 13, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| MARGARITO B., | NO:  1:17-CV-03045-FVS |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 13 and 20.  This matter was submitted for consideration

without oral argument.  The plaintiff is represented by attorney D. James Tree.

The defendant is represented by Special Assistant United States Attorney Brett E.

Eckelberg.  The Court has reviewed the administrative record and the parties'

completed briefing and is fully informed.  For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 20, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Margarito B. ("Plaintiff") filed for supplemental security income ("SSI") on May 15, 2013. Tr. 15, 142. Plaintiff initially alleged an onset date of January 1, 2003, but later amended the alleged onset date to May 15, 2013. Tr. 15, 42, 130-34. Benefits were denied initially, Tr. 78-81, and upon reconsideration, Tr. 86-88. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 28, 2015. Tr. 37-64. On September 2, 2015, the ALJ denied Plaintiff's claim, Tr. 15-26, and the Appeals Council denied review. Tr. 1-4. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 36 years old at the time of the hearing. *See* Tr. 130. He dropped out of school in the tenth grade. Tr. 46. He has some work experience in landscaping, road construction and packing fruit. Tr. 43-44. He occasionally works once or twice a week sanding cars at a friend's auto body shop, but he only goes in when he feels like it and not every week. Tr. 44-45, 50. He has been

diagnosed with bipolar disorder and depression. Tr. 52-53. When he is depressed

he stops going out and stays home to watch television. Tr. 53. He will not take

showers or want to eat when he is depressed and he will lie in bed most of the day.

Tr. 54. He gets depressed every two or three months for a week or two at a time.

Tr. 53. When he takes medication, he does not notice the depression. Tr. 53.

Sometimes he may have panic attacks, he gets sweaty and nervous and feels like

throwing up. Tr. 55. He occasionally blacks out and does things he cannot

remember. Tr. 56.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

However, a finding that a claimant is "disabled" under the five-step evaluation does not always automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 15, 2013, the application date. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder with psychotic features, alcohol abuse, marijuana use disorder, obesity, and hypertension. Tr. 17. At step three, the ALJ found that Plaintiff's impairments, including the substance use disorders, meet section 12.04 of the listed impairments. Tr. 18.

However, because there is evidence of substance use, the ALJ continued the analysis. The ALJ found that if Plaintiff stopped the substance use, he would have the following severe impairments: obesity, hypertension, bipolar disorder with psychotic features, alcohol abuse in remission, and marijuana use disorder. Tr. 18. The ALJ determined that if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 18.

The ALJ then found that if Plaintiff stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [H]e would be limited to occasional climbing of ladders, ropes, and scaffolds and occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery. He would be limited to tasks that can be learned in 30 days or less involving no more than simple work-related decisions and few workplace changes.

Tr. 20.

At step four, the ALJ found that if Plaintiff stopped the substance use, he would be able to perform past relevant work as an agricultural produce sorter, an agricultural produce packer, and a landscape laborer. Tr. 24. Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, and if Plaintiff stopped the substance use, the ALJ found there would be a significant number of jobs in the national economy that Plaintiff could perform, such as kitchen helper, cleaner II, and laundry worker II. Tr. 24-25.

The ALJ then found Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Tr. 25. Therefore, at step five, because the substance use disorder is a contributing factor material to the determination of disability, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from the date the application was filed until the date of the decision. Tr. 25.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 19. Plaintiff raises the following issues for review:

1.  Whether the ALJ improperly found substance abuse is material to the disability determination;

2.  Whether the ALJ improperly assessed the medical evidence;

3.  Whether the ALJ improperly considered Plaintiff's symptom complaints;

4.  Whether the ALJ improperly considered hypertension and obesity; and

5.  Whether the ALJ improperly found Plaintiff has past relevant work.

ECF No. 13 at 4-22.

## DISCUSSION

### A. Substance Abuse

Plaintiff contends the ALJ improperly found that his substance use was material to the disability finding. ECF No. 13 at 4-7. A social security claimant is not entitled to benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Therefore, when there is medical evidence of drug or alcohol addiction, the ALJ must conduct a DAA analysis and determine whether drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). To make that determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the remaining

limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). "The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

Here, the ALJ found substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Tr. 25. Plaintiff contends this finding was not supported by substantial evidence. ECF No. 13 at 5.

First, Plaintiff contends substance use does not contribute to his disability because no medical provider found alcohol use to be material. ECF No. 13 at 5. A DAA materiality finding must be supported by "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder." S.S.R. 13-2p at *9. Thus, evidence that Plaintiff is not disabled in the absence of drug and alcohol abuse is essential to support the materiality finding, which may but not necessarily include medical opinion

evidence specifically about materiality.[1]  While it is correct that none of the three medical opinions in the record found Plaintiff's substance use is material to disability, Dr. Dana Harmon, a reviewing psychologist, noted it was unclear as to whether Plaintiff is primarily impaired due to substance abuse, but ultimately concluded that, regardless, "I do not see strong evidence of long-term psychiatric disability in these records." Tr. 332.  Thus, the question is whether the ALJ's materiality finding is supported by substantial evidence in the record indicating Plaintiff would not be disabled without the effects of drug and alcohol abuse.

Plaintiff contends the record does not support the finding that Plaintiff would not have a disabling condition without the use of alcohol.  ECF No. 13 at 6.  In finding that the medical evidence does not support disabling limitations in the absence of substance abuse, the ALJ noted that Plaintiff was in good health and spirits when he started on Prozac in May 2013.  Tr. 20, 191-92.  He had been off medications for two years at that time.  Tr. 191.  In December 2013, Plaintiff's

---

[1] The opinion of an acceptable medical source is required for the finding that drug and alcohol abuse is at issue.  "As for any medically determinable impairment, we must have objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has DAA."  S.S.R. 13-2p at *10.

condition worsened, but he was smoking marijuana regularly, had not been taking his Prozac and did not follow up with a psychiatric referral. Tr. 20, 232, 323. In January and February 2014, Plaintiff was comfortable, made good eye contact, had intact thought process, and no delusions or hallucinations. Tr. 20-21, 316-17, 321-22. He was in good health and spirits, alert, active, had a cheerful affect, his thought process was intact, and he was fully cognitive. Tr. 317, 322.

In April 2014, Plaintiff was detained for substance abuse detention and detoxification. Tr. 21 (citing Tr. 334; *see also* Tr. 229-30, 251). At the end of May 2014, Plaintiff was again involuntarily detained for 14 days due to worsening symptoms. Tr. 223-25. Plaintiff admitted he needed to be consistent with his medications to stay "on the right track," and that, "I will drink beer and smoke a little weed, and this gets me off track." Tr. 21, 207. He noted he had been "drinking more" before entering the hospital. Tr. 270. After discharge, his mental status was unremarkable and therapy notes indicate he was feeling better and maintaining his medication. Tr. 21, 259-61, 480.

In July 2014, Plaintiff was involuntarily admitted for aggressive and threatening behavior after he started drinking again and went off his medications. Tr. 21, 334, 521. Although chemical dependency treatment was not warranted based on Plaintiff's self-report, it was noted that chemical dependency support was appropriate, and that when he hangs out with friends he has a tendency to drink.

Tr. 21, 357, 453, 463.  The ALJ observed that he rapidly re-stabilized on medication and his symptoms were under control upon discharge.  Tr. 21, 369, 453.  The ALJ cited numerous records from August 2014 to July 2015 indicating variously that Plaintiff had no complaints, was doing well, was asymptomatic, and remained stable; was avoiding alcohol and was not depressed; denied outbursts of anger and depressive or psychotic symptoms; was psychiatrically stable and doing very well; was pleasant and cooperative with good appetite, energy, and concentration; was doing relatively well; had no issues or concerns; was alert, cooperative, and friendly with less anxiety, adequate attention and memory, no hallucinations or suicidal ideation; was at baseline and asymptomatic; was very social with no depression or psychotic symptoms; looked and felt good and was taking medications as prescribed; was alert and oriented with appropriate mood and affect, grossly normal intellect, intact memory, and no anxiety.  Tr. 21-22, 374, 376, 379, 383, 387, 389, 392-95, 397-98, 400, 402, 406, 410-14, 418, 434, 439, 443, 480, 531, 534-35,549, 551-52, 542-43, 546.  All of these findings reasonably suggest, as the ALJ concluded, that Plaintiff stabilized during his July 2014 involuntary admission and remained stable thereafter.

Plaintiff notes that urine ethanol tests were negative at his December 2013 emergency room visit for increased anxiety, and before the May and July involuntary detentions, ECF No.13 at 6 (citing Tr. 290, 302, 522), presumably

suggesting that alcohol was not a factor in those episodes.[2]  However, "Each

substance of abuse, including alcohol, has different intoxication and long-term

physiologic effects.  In addition, there is a wide variation in the duration and

intensity of substance use among claimants with DAA, and there are wide

variations in the interactions of DAA with different types of physical and mental

disorders."  S.S.R. 13-2p at *12.  There is no basis in the record to conclusively

infer that the negative urine ethanol tests indicate substance use was not a factor

material to Plaintiff's disability in light of the factors cited by the ALJ, including

Plaintiff's own admissions.  These factor reasonably lead to the conclusion that

Plaintiff is not disabled absent substance abuse.

Plaintiff also contends the ALJ erred by finding he has "engaged in violent,

threatening, and destructive behavior, but only when he used alcohol or marijuana

and stopped taking his antidepressant medications."  Tr. 18; ECF No. 13 at 6.

However, as discussed *supra*, Plaintiff's aggressive and threatening behavior in

July 2014 was precipitated by drinking and going off medications.  Indeed, in June

2015 Plaintiff stated, "When I drink alcohol I get angry and depressed at the same

time.  I know now not to drink because if I mix alcohol with my meds I don't feel

---

[2] Drug screenings on May 19, 2014 and July 15, 2014 were negative for urine

ethanol but positive for cannabinoids.  Tr. 290, 522-23.

good." Tr. 518, 529. He reported marijuana dependence and indicated it is hard to avoid smoking marijuana when his friends give it to him. Tr. 529. The evidence cited by the ALJ reasonably ties Plaintiff's aggressive and threatening behavior to alcohol use and inconsistent use of medication. Based on the foregoing, the ALJ's interpretation of the evidence is reasonable and constitutes substantial evidence supporting the materiality finding.

**B.     Opinion Evidence**

Plaintiff contends the ALJ improperly assessed the medical opinions of Rebekah A. Cline, Psy.D, and Dana Harmon, Ph.D.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source, such as a physician or

psychologist, is generally given more weight than that of an "other source." 20

C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other

sources" include nurse practitioners, physicians' assistants, therapists, teachers,

social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d)

(2013).[3] However, the ALJ is required to "consider observations by non-medical

---

[3] Some of the regulations cited in this decision were revised effective March 17,

2017. E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

1.   *Rebekah A. Cline, Psy.D*

Dr. Cline, an examining psychologist, completed a DSHS Psychological/Psychiatric Evaluation form in January 2015. Tr. 327-31. She diagnosed bipolar II disorder with psychotic features and assessed six moderate and three marked limitations. Tr. 329-30. Dr. Cline indicated Plaintiff has a marked limitation in the ability to understand, remember and persist in tasks by following detailed instructions; in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms; and in the ability to maintain appropriate behavior in the work setting. Tr. 329-30. She

---

Fed. Reg. 5875 (January 18, 2017) (revising 20 C.F.R. § 416.913). Since the revisions were not effective at the time of the ALJ's decision, they does not apply to this case. For revised regulations, the version effective at the time of the ALJ's decision is noted.

opined that Plaintiff's impairments are not primarily the result of alcohol or drug use in the previous 60 days, and that Plaintiff would be impaired for nine to 12 months with treatment. Tr. 330. Dr. Cline write, "As long as claimant remains on his medications he appears capable of sheltered employment, likely part time and this should be sought through DVR." Tr. 330.

The ALJ gave little weight to Dr. Cline's opinion. Tr. 22-23. Because Dr. Cline's opinion was contradicted by the opinion of Dr. Harmon (Tr. 332-33), the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Cline's opinion is inconsistent with the longitudinal treatment history and Plaintiff's performance on mental status exams. Tr. 23. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ detailed an overview of the Plaintiff's treatment history and findings from mental status exam. Tr. 20-21. For example, in April 2014, a few days after discharge from detox, mental status exam results indicated Plaintiff was oriented with clear thoughts, no hallucinations or delusions, and normal cognitive functions, despite a slightly dulled and dysthymic affect and depressed mood. Tr. 21, 236. After Plaintiff's May-June 2014 hospitalization, Plaintiff's mental status exam was largely unremarkable and he

was alert, oriented, and cooperative; mood was good; he had normal speech, intact cognition, linear thoughts, no hallucinations, no suicidal ideation, and fair insight and judgment. Tr. 21, 260-61. Upon discharge from involuntary detention in July 2014, Plaintiff was oriented and conversant, was able to interact with others, was fairly pleasant, and had normal speech, intact cognition, no hallucinations or suicidal ideation, and fair insight and judgment. Tr. 21, 369. Similarly, in May 2015, mental status exam findings noted Plaintiff was alert, cooperative and friendly with less anxiety, had adequate attention and memory, and no hallucinations or suicidal ideation. Tr. 21, 542-43. As discussed *supra*, the ALJ reasonably found that Plaintiff's mental health deteriorated when he drank, smoked marijuana, and stopped taking his medication, but he rapidly stabilized when he resumed medication. Tr. 23.

Plaintiff notes some abnormal findings on mental status exams, including Dr. Cline's findings that Plaintiff had a flattened affect, thought processes and content outside normal limits, concrete thinking, and impaired insight and judgment. ECF No. 13 at 9 (citing Tr. 331). Plaintiff cites other exams with similar findings of impaired or poor insight or judgment, blunted or constricted affect, labile affect, hallucinations, impaired memory, impaired attention and concentration, tangential thoughts, paranoid delusions, fidgeting, low volume and rate of speech, guardedness, and aggression or hostility. ECF No. 13 at 10 (citing

numerous records).  However, Plaintiff cites some exams during periods when Plaintiff was hospitalized and in the process of re-stabilizing.  For example, Plaintiff cites a May 24, 2014 record several times to show Plaintiff had impaired memory, blunted or constricted affect, tangential thought form, and insight and judgment were impaired, but he was still in inpatient treatment at the time, was talking to himself and hearing voices, and had not yet stabilized.  ECF No. 13 at 9-10, Tr. 214-15.  The ALJ's point, however, is that once Plaintiff was stable and ready for discharge, his mental status exams were relatively unremarkable.  Tr. 21, 23.  To the extent the evidence conflicts, the ALJ's resolution of the conflict was reasonable.  The court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence.  *Tackett*, 180 F.3d at 1097.

Second, the ALJ found the opinion is inconsistent with Plaintiff's daily activities and social functioning.  Tr. 23.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601-602.  The ALJ cited numerous Plaintiff's activities reasonably conflicting with Plaintiff's allegations of disabling limitations.  Tr. 18-19.  Examples of activities cited by the ALJ include:  going to a barbecue at his sister's house and visiting a friend's house (Tr. 434); helping with a car wash fundraiser (Tr. 418); socializing, attending car shows, and car cruising on a Saturday night (Tr. 423, 425, 427-28); he was described as quite social (Tr. 408); helping at a

friend's auto body shop where he painted and repaired cars and cleaned (Tr. 44-45, 49, 273, 376, 386, 403, 546); he spent a good deal of each day with his father working on projects and doing activities (Tr. 376, 403); and helped his brother-in-law install flooring (Tr. 546). These and other activities were reasonably determined by the ALJ to indicate that Plaintiff manages basic daily activities well, has cooperative interactions and largely intact cognitive abilities, socializes with friends, and works on and off at his friend's auto body shop. Tr. 23. This is a specific, legitimate reason for rejecting Dr. Cline's opinion.

Third, the ALJ agreed with Dr. Harmon's opinion that Dr. Cline overstated the likely duration of Plaintiff's impairment. Tr. 23. Dr. Harmon indicated that Dr. Cline's opinion regarding the duration of Plaintiff's impairment is not consistent with the medical evidence and concluded the medical evidence supports a duration of six months. Tr. 332. As discussed *infra*, the ALJ reasonably considered Dr. Cline's contradiction of Dr. Harmon's opinion regarding duration and this is therefore a specific, legitimate reason for rejecting Dr. Cline's opinion.

Fourth, the ALJ found Dr. Cline's opinion was based at least in part on Plaintiff's self-report, which was determined by the ALJ to be not entirely credible. Tr. 23. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As discussed *infra*, the ALJ properly found Plaintiff's symptom complaints less than fully credible. To the extent Dr. Cline's opinion was based on Plaintiff's self-report, this is a specific, legitimate reason for assigning less weight to the opinion.

### 2. *Dana Harmon, Ph.D.*

Dr. Harmon, a reviewing psychologist, completed a "Review of Medical Evidence" form in February 2015. Tr. 332-33. Dr. Harmon reviewed Dr. Cline's report and checked boxes indicating Dr. Cline's diagnoses and assessment of severity and functional limitations are supported by the evidence. Tr. 332. Dr. Harmon wrote, "Margarito has apparently continued to show moderate to marked functional limitations, even with mental health treatment and a beginning sobriety." Tr. 332. Dr. Harmon checked a box indicating Plaintiff is not primarily impaired due to substance abuse, but included a comment stating, "This is unclear. Margarito has apparently had serious problems with alcohol, but only limited information about this issue is available." Tr. 332. Dr. Harmon found that Dr. Cline's opinion regarding the duration of Plaintiff's impairment (*see* Tr. 330, assessing a duration of nine to 12 months with treatment) is not consistent with the medical evidence and opined that the duration supported by the medical evidence is six months. Tr. 332. Dr. Harmon indicated Dr. Cline's opinion "appears to overstate" the likely duration. Tr. 332. Dr. Harmon noted, "Margarito is fairly

young, has intact cognitive abilities, is usually able to manage basic ADLs well, and apparently works off-and-on at a friend's auto body shop. I do not see strong evidence of a long-term psychiatric disability in these records." Tr. 332.

The ALJ did not specifically assign weight to Dr. Harmon's opinion, but indicated he agreed with Dr. Harmon's duration comments, suggesting weight was given to the opinion. Tr. 23.

Plaintiff contends the ALJ "harmfully failed" to assign weight to Dr. Harmon's opinion, noting that Dr. Harmon agreed with Dr. Cline's functional assessment of limitations, and asserting that, "Dr. Harmon's opinion therefore largely supports a finding of disability, her durational limit aside." ECF No. 13 at 11. Plaintiff's argument fails because Dr. Harmon specifically stated, "I do not see strong evidence of a long-term psychiatric disability in these records." Tr. 332. Further, although it would be favorable to Plaintiff if Dr. Harmon's durational assessment could be set aside, the durational assessment is part of the opinion. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry*, 688 F.3d 661, 672 (9th Cir. 2012). Because Dr. Harmon's opinion is that the limitations assessed would

not last longer than six months, the duration requirement is not met and the opinion therefore does not support a disability finding.

Plaintiff also argues that Dr. Harmon's opinion alone cannot support rejection of Dr. Cline's opinion. ECF No. 13 at 11-12. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of an examining or treating physician may be rejected based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831 (citations omitted). As discussed *supra*, the ALJ provided legally sufficient specific, legitimate reasons to reject the opinion of Dr. Cline apart from the opinion of Dr. Harmon. Therefore, the ALJ appropriately considered Dr. Harmon's opinion.

### 3. *Nancy Schwarzkopf, ARNP*

In January 2015, Ms. Schwarzkopf, a treating nurse practitioner, completed a "Medical Report" form. Tr. 325-26. She listed diagnoses of hypertension, hyperlipidemia, and obesity. Tr. 325. She identified no symptoms and no conditions causing pain; noted medications for blood pressure, cholesterol, and mental health disorder with side effects of fatigue; stated Plaintiff's prognosis is

stable; wrote "unknown" when asked whether work on a regular and continuing basis would cause Plaintiff's condition to deteriorate; and opined that Plaintiff would miss four or more days per month if he was work a 40-hour work schedule. Tr. 326. She recommended contacting Plaintiff's mental health provider for more information. Tr. 326.

The ALJ gave little weight to Ms. Schwarzkopf's opinion. Tr. 23. As a nurse practitioner, Ms. Schwarzkopf is an "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, the ALJ was required to cite germane reasons for rejecting the opinion. *See Dodrill*, 12 F.3d at 919.

The ALJ gave the same reasons for rejecting Ms. Schwarzkopf's opinion as for Dr. Cline's opinion. Tr. 23. These reasons are also germane to Ms. Schwarzkopf's opinion and therefore the opinion was rejected for legally sufficient reasons. *See supra*.

Additionally, the ALJ noted that Ms. Schwarzkopf explained that her opinion that Plaintiff would miss four or more days of work per month is based on the fact that Plaintiff "has guardian/parent/case manager to assist [with] ADLs." Tr. 326. The ALJ observed that there is no evidence that Plaintiff requires significant assistance with his activities of daily living. Tr. 23. In fact, the ALJ noted that Plaintiff hopes to move out of his parents' house and into his own apartment if he obtains Social Security benefits. Tr. 23, 383, 433, 441. Plaintiff

contends the ALJ misread the record since his sister brought him to the emergency room, obtained help during his crises, and has been involved in his treatment, and he decompensated to the point of his second involuntary detention when she left town. ECF No. 13 at 13-14 (citing Tr. 232, 236, 247, 473, 480). However, the ALJ's finding that alcohol use was material to Plaintiff's disability reasonably suggests the assistance of Plaintiff's sister in taking him to the hospital and helping with medications was due to the effects Plaintiff's alcohol use. This is a germane reason supported by substantial evidence.

Lastly, the ALJ found Ms. Schwarzkopf's opinion does not contain any citation to supporting medical evidence. Tr. 326. A medical opinion may also be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Indeed, Ms. Schwarzkopf's statement does not refer to any medical evidence or observations supporting her opinion and the ALJ reasonably rejected the opinion for that germane reason. Plaintiff observes that the regulations provide that in certain instances, an "other source" opinion may outweigh the opinion of an acceptable medical source. ECF No. 13 at 12 (citing 20 C.F.R. § 416.927(f)). However, the ALJ's findings that Ms. Schwarzkopf's opinion was inconsistent with the longitudinal record and is not supported by medical evidence reasonably

support the ALJ's failure to assign greater weight to Ms. Schwarzkopf's opinion in this case.

Plaintiff further argues that Ms. Schwarzkopf's indication that she reviewed medical records constitutes citations to medical evidence. ECF No. 13 at 14 (citing Tr. 325). When asked to describe in detail the patient's signs, including the relevant clinical findings, test results, etc., Ms. Schwarzkopf wrote, "Record review – Behavioral Health Provider @ CWCMH for MH condition." Tr. 325. Records from Central Washington Comprehensive Mental Health cover more than 200 pages (Tr. 198-246, 247-87, 334-482) and thus this statement does not reasonably constitute a detailed description of the clinical findings supporting her opinion. Indeed, those records also contain numerous records cited by the ALJ such mental status exam results from periods where Plaintiff was stabilized, *see e.g.*, Tr. 236, 260-61, 369, and records from January 2015, the same month Ms. Schwarzkopf wrote her opinion, indicating Plaintiff was stable and repeatedly denied depressive or psychotic symptoms. Tr. 21, 383, 387, 389. Lastly, Ms. Schwarzkopf's own depression screening, review of systems, and physical exam on the date of her opinion do not support her findings with Plaintiff reporting no positive responses on the depression screening, negative psychological findings, and psychiatric exam findings that Plaintiff was oriented to time, place, person and situation and had an appropriate mood and affect. Tr. 496, 498-99.

Plaintiff also contends Ms. Schwarzkopf's opinion supports limitations due to the side effects of medication. ECF No. 13 at 14. Ms. Schwarzkopf indicated fatigue is a side effect of Plaintiff's medication, Tr. 325. Plaintiff cites *Varney v. Sec'y of HHS*, 846 F.2d 581, 585, for the proposition that the ALJ must reject a claimant's testimony regarding side effects in a manner similar to rejecting excess pain testimony. ECF No. 13 at 14-15. *Varney* applies to a claimant's testimony about side effects, not to a medical opinion, and there is no reasonable reading of *Varney* that heightens the standard required to reject a medical opinion because it mentions possible side effects of medication. *See id.* Furthermore, Plaintiff reported to Ms. Schwarzkopf on the date of her opinion that he had no problem with feeling tired or having little energy, Tr. 496, and was negative for fatigue, fever, and restlessness, Tr. 498, supporting the ALJ's conclusion that Ms. Schwarzkopf's opinion is inconsistent with the medical record.

**C. Symptom Complaints**

Plaintiff contends the ALJ improperly considered his symptoms complaints. ECF No. 13 at 17. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided several specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible. Tr. 20-22.

First, the ALJ found the medical evidence does not substantiate Plaintiff's allegations of disabling limitations in the absence of substance abuse. Tr. 20. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff reasserts his argument that the ALJ improperly analyzed the materiality of his alcohol use, ECF No. 13 at 19-20, but as discussed, *supra*, the ALJ's findings were reasonably supported by substantial evidence in the record.

Plaintiff also argues the objective evidence cannot be the sole reason for the credibility finding under *Rollins*, ECF No. 13 at 20, but as discussed *infra*, the ALJ cited other clear and convincing reasons supporting the credibility finding. Plaintiff also argues the ALJ failed to consider the record as a whole and failed to consider Plaintiff's improvement in mental health symptoms in context. ECF No. 13 at 20. Although Plaintiff argues for a different interpretation of the evidence, as discussed *supra*, the ALJ described an overall view of the record that is reasonable and based on substantial evidence. *See* Tr. 21-23. When the evidence is subject to more than one rational interpretation, the court must defer to the ALJ's conclusion. *Andrews*, 53 F.3d at 1041.

Second, the ALJ found Plaintiff has never been especially motivated to work. Tr. 22. An ALJ may draw reasonable inferences regarding a claimant's motivation to work. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The claimant's work record is an appropriate consideration in weighing the claimant's credibility. *Thomas*, 278 F.3d at 958-59; 20 C.F.R. § 416.929(c)(3) (2011). The ALJ noted Plaintiff's poor work history and ambivalence about getting his GED. Tr. 22, 138, 374. Plaintiff testified he is "just not interested" in looking for a job. Tr. 49-50. The ALJ reasonably concluded that, "Although he is not interested in working, there is no indication that he is unable to do so from a

social or cognitive standpoint." Tr. 22. This is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Plaintiff's daily activities and social interactions are inconsistent with his allegations of disabling functional limitations. Tr. 22. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603.

The ALJ noted numerous activities Plaintiff engaged in that were reasonably determined to be inconsistent with his allegations of disability. Tr. 18-19, 22. The ALJ noted that Plaintiff said he did not engage in other activities because he did not have any money, not because of any disability. Tr. 22, 366. Plaintiff's argument focuses on his activities at his friend's auto body shop where he would occasionally do some sweeping, sanding, get drinks for his friends, or read magazines and socialize. ECF No. 13 at 18 (citing Tr. 44, 50-51, 433). However,

"Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. The ALJ reasonably found these and other activities Plaintiff participated in undermine his credibility.

Fourth, the ALJ noted Plaintiff's failure to attend a consultative psychological evaluation in July 2013. Tr. 20, 197. The regulations provide that benefits may be denied for failing to participate in a consultative examination arranged on a claimant's behalf. 20 C.F.R. § 416.918. Plaintiff contends the ALJ was required to consider good cause for missing the evaluation. ECF No. 13 at 17-18. Examples of good cause listed in the regulation include illness on the date of the examination, failure to get notice of the exam, receiving incomplete or incorrect notice of the exam, and death or serious illness in the family. *Id.* At the hearing, however, Plaintiff did not offer a good cause reason for missing the consultative exam, he testified only that he did not remember the appointment or receiving reminder notices about the exam. Tr. 57. In briefing, Plaintiff argues good cause is established because his failure to attend was caused by his inability to maintain a schedule or attendance. ECF No. 13 at 17-18. Plaintiff's good cause argument is premised on the assumption his other allegations are credited, and as discussed in this decision, the ALJ's findings to the contrary are reasonable and

supported by substantial evidence.  Thus, the ALJ reasonably made a negative inference from Plaintiff's failure to attend the consultative psychological evaluation.[4]

Plaintiff also contend "the ALJ erred in discrediting Mr. B[.] for not always taking his medications."  ECF No. 13 at 18 (citing Tr. 21).  The Court disagrees.  The ALJ did not cite Plaintiff's inconsistent use of prescribed medication as a reason for finding him less than fully credible.  In discussing the medical evidence, the ALJ noted variously that Plaintiff was not taking medication consistently, acknowledged he needed to take his medications consistently to maintain stability, and was involuntarily admitted for aggressive and threatening behavior in July 2014 after he started drinking and went off his medication.  Tr. 21, 207, 334-41,

---

[4] Even if the ALJ could or should have considered Plaintiff's allegations as a good cause basis for missing the appointment, and the Court does not so conclude, the ALJ cited other clear and convincing reasons supported by substantial evidence which support the ALJ's credibility finding.  As a result, any error would be harmless.  *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson*, 359 F.3d at 1195-97.

521-22.  The ALJ observed that Plaintiff did not fully comply with his medication regimen at times after stabilizing in July 2014, but observed that there was no significant change or deterioration in his condition notwithstanding.  Tr. 21.  However, the ALJ did not summarize, analyze, or draw a conclusion about Plaintiff's inconsistent use of medication indicating it is a basis for the credibility determination.  Thus, Plaintiff's argument is moot.

**D.    Obesity and Hypertension**

Plaintiff contends the ALJ failed to include limitations resulting from the severe impairments of obesity and hypertension in the RFC finding.  ECF No. 13 at 16-17.  The RFC is "the most [a claimant] can still do despite his limitations."  20 C.F.R. § 416.945(a)(1).  In making this finding, the ALJ need only include credible limitations supported by substantial evidence.  *Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC).  The ALJ considered obesity and hypertension at step three, noting "there is no indication that his weight exacerbated his hypertension" and that his hypertension was adequately managed.  Tr. 18.  The ALJ also indicated, "I have also included postural and environmental limitations as a precaution taking into account the claimant's hypertension and obesity."  Tr. 22.  Indeed, the RFC includes limitations on climbing ladders, ropes, and scaffolds, and

occasional exposure to hazards such as proximity to unprotected heights and moving machinery. Tr. 20.

Plaintiff argues the ALJ's determination that Plaintiff could do work at all exertional levels, including "very heavy" work which requires lifting over 100 pounds at a time, "runs contrary to the evidence and is unreasonable on its face." ECF No. 13 at 17. However, Plaintiff fails to identify any evidence contrary to the ALJ's finding. The ALJ reviewed the evidence of physical limitations, Tr. 22, and Plaintiff has not demonstrated that obesity suggests additional or enhanced limitations. Furthermore, Plaintiff points to no evidence that hypertension causes additional limitations. Thus, the ALJ adequately addressed obesity and hypertension.

## E. Past Relevant Work

Plaintiff contends the ALJ improperly found Plaintiff has past relevant work. ECF No. 13 at 15-16. Past relevant work is work a claimant has performed within the past 15 years which is substantial gainful activity and which lasted long enough for the claimant to learn it. 20 C.F.R. § 416.960. Generally, if a claimant works for substantial earnings as listed in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. § 416.974(a). The ALJ found Plaintiff has past relevant work as an agricultural produce sorter, and agricultural produce packer, and a landscape laborer. Tr. 24. Plaintiff notes his earnings record reflects

his earnings at those jobs were insufficient to constitute past relevant work.  ECF No. 13 at 15-16 (citing Tr. 43-44, 136; POMS DI 10501.015).  Defendant does not argue otherwise but contends "the ALJ's step four finding is immaterial given the ALJ's adequate, alternative step five finding."  ECF No. 20 at 19.  Indeed, the ALJ indicated, "Although the claimant is capable of performing past relevant work, I have continued with the sequential evaluation in the alternative based on his relatively limited earnings."  Tr. 24.  When an ALJ's step four determination constitutes error, it is harmless error if the ALJ's alternative finding at step five is legally sufficient.  *Tommasetti*, 533 F.3d at 1042 -1043.  In this case, there is no allegation that the alternative step five finding is based on error (except as otherwise discussed in this decision), and because the ALJ's findings are based on substantial evidence, the error at step four is harmless.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  To the extent the evidence could be interpreted more favorably to Plaintiff, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes*, 881 F.2d at 750.  In this case, the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence in the record.  Therefore, the ALJ's decision is affirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 20, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

the file.

   **DATED** July 13, 2018.

                                   _____*s/Fred Van Sickle*_____
                                           Fred Van Sickle
                                   Senior United States District Judge